UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES FLETCHER,

     Plaintiff,

v.                                  Case No:   2:17-cv-207-FtM-99MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

### REPORT AND RECOMMENDATION

Before the Court is the Complaint (Doc. 1) filed on April 17, 2017.  Plaintiff James Fletcher, Jr. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed a joint legal memorandum in support of their positions.  For the reasons set out herein, the Court respectfully recommends that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On November 18, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (Tr. at 79, 206-15).  Plaintiff asserted an onset date of July 1, 2013.  (*Id.* at 206).  Plaintiff's applications were denied initially on December 17, 2014 and on reconsideration on January 26, 2015.  (*Id.* at 79, 80, 98, 99).  A hearing was held before Administrative Law Judge ("ALJ") Rosanne M. Dummer on July 27, 2016.  (*Id.* at 41-78).  The ALJ issued an unfavorable decision on October 25, 2016.  (*Id.* at 19-35).  The ALJ found Plaintiff not to be under a disability from July 1, 2013, through the date of the decision.  (*Id.* at 35).

On February 16, 2017, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-4).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on April 17, 2017.  This case is ripe for review.

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

---

[1]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2014.  (Tr. at 21).  At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following periods:  April through June 2014; and January through March 2016.  (*Id.* at 21).  However, the ALJ found that "there has been a continuous 12-month period(s) [sic] when the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity."  (*Id.* at 22).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  right inguinal hernia, stable; asymptomatic human immunodeficiency virus (HIV), stable; lumbar degenerative disc disease; degenerative joint disease of the hip; and substance use (cannabis).  (*Id.* at 22).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (*Id.* at 23).

At step four, the ALJ found the following:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b).  He could lift/carry twenty pounds occasionally and ten pounds frequently.  The claimant could sit four of eight hours,

two hours at a time; and stand/walk four of eight hours, one hour at a time.  He
could occasionally push/pull with the upper extremities; he could frequently reach,
handle, finger, and feel.  The claimant could occasionally climb ramps/stairs,
balance, stoop, kneel, and crouch.  He should never climb ladders/scaffolds and
never crawl.  He should never work at unprotected heights, and never operate a
motor vehicle.  He could occasionally work around moving mechanical parts,
humidity/wetness, dusts, odors, fumes, and pulmonary irritants, extremes of
heat/cold, and vibrations.  He could tolerate moderate (*i.e.*, office) noise (Ex. 16F).
He should avoid fast pace or high production goal work.  As of June 26, 2016 (Ex.
9F), the claimant had additional limitations as follows:  he could occasionally
operate foot controls with the right lower extremity and frequently operate foot
controls with the left lower extremity; and could travel about 100 feet without the
use of a cane, and then required a cane for ambulation (*i.e.*, Ex. 16F).

(*Id.* at 24).

The ALJ determined that Plaintiff was unable to perform his past relevant work as a farm

laborer, delivery truck driver, car/truck cleaner, scrap yard laborer, general laborer, and

landscape laborer.  (*Id.* at 32).  The ALJ found Plaintiff a younger individual, having been born

on October 19, 1966.  (*Id.*).  The ALJ considered Plaintiff's age, education, work experience, and

residual functional capacity, and found that there were jobs that existed in significant numbers in

the national economy that Plaintiff could perform.  (*Id.* at 32).  The ALJ also found the

following:

The vocational expert stated in post-hearing interrogatories (Ex. 25E) that given all
of these factors the individual would be able to perform the requirements of
unskilled, light and sedentary occupations nationally.  Examples provided at the
unskilled light level included (l) information clerk (DOT code: 237.367-018),
246,000; (2) office helpers (DOT code: 239.567-010), 234,700; and (3) rental clerks
(DOT code: 295.367-026), 183,000.  Examples provided at the unskilled sedentary
level included: (1) information clerk/call out operator (DOT code: 237.367-014),
39,650; (2) interview/charge account clerk (DOT code: 205.367-014), 48,600; and
(3) order clerk (DOT code: 209.567-014), 29,200.  The vocational expert stated that
the jobs given would allow for a change of positions, based on her experience, as
the DOT does not define occupations that allow for a change in positions
(Ex.25E/3).

Per the residual functional capacity above as of June 26, 2016, the claimant could
occasionally operate of [sic] foot controls with the right lower extremity and
frequent operate foot controls with the left lower extremity; he could travel about

100' without the use of a cane and then required a cane for ambulation.  With these additional limitations, the vocational expert stated would not affect [sic] the jobs identified above (Ex.25E/4).

(*Id.* at 33).[2]  The ALJ concluded that Plaintiff was not under a disability from July 1, 2013, through the date of the decision.  (*Id.* at 35).

### D.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

---

[2]  "DOT" refers to the *Dictionary of Occupational Titles*.

## II.     Analysis

On appeal, Plaintiff raises three issues.  As stated by Plaintiff, they are:

(1)     Whether substantial evidence supports the ALJ's consideration of the opinions of Dr. Desta, Dr. Kibria, and Dr. Galst in assessing Plaintiff's RFC.

(2)     Whether the Commissioner met her burden, at step five of the disability evaluation process, by showing that there are a significant number of jobs Plaintiff can perform in the national economy.

(3)     Whether the ALJ adjudicated the entire period between Plaintiff's alleged onset date and the ALJ's decision.

(Doc. 17 at 7, 15, 21).  The Court addresses each issue in turn.

### A.     Whether the ALJ Properly Considered the Opinions of Drs. Desta, Kibria and Galst

Plaintiff argues that the ALJ erred in affording little weight to the opinion of Dr. Desta, in assigning greater weight to the opinion of non-examining medical consultant, Dr. Galst, and in affording less weight to the opinion of examining physician Dr. Kibria.  (Doc. 17 at 8-11).  The Commissioner argues that the ALJ's decision regarding the weight afforded the opinions of Dr. Desta, Dr. Kibria, and Dr. Galst are supported by substantial evidence.  (Doc. 17 at 11-14).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79

(11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has concluded that good cause exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  The Court addresses the ALJ's consideration of the opinions of Dr. Desta, Dr. Kibria, and Dr. Galst in turn.

### 1.    Dr. Desta

Plaintiff argues that the ALJ did not show good cause for assessing little weight to Dr. Desta's opinion.  (Doc 17 at 8).  Plaintiff claims that the ALJ stated "that the limitations she assessed were 'claimant favorable,' despite issuing an unfavorable decision" and this "conclusory analysis" did not provide good cause for rejecting Dr. Desta's opinion.  (*Id.* at 8).  Plaintiff also claims that the ALJ failed to consider the lengthy treating relationship between Plaintiff and Dr. Desta of eighteen (18) months.  (*Id.*)  Further, Plaintiff argues that the ALJ "failed to consider that Dr. Desta believed Plaintiff's condition was of sufficient severity to

attempt to secure orthopedic intervention." (*Id.*). Finally, Plaintiff argues that Dr. Desta's opinion is consistent with "the abnormalities identified on examination by Dr. Kibria." (*Id.*).

The Commissioner points out that the ALJ noted that Dr. Desta's opinion was not supported by any specific examination findings. (*Id.* at 12). The Commissioner further contends that Dr. Desta opined that Plaintiff's HIV – not his orthopedic condition – caused the functional limitations. (*Id.*). Finally, the Commissioner claims that the length of the treating relationship did not cure the conclusory nature of Dr. Desta's opinion. (*Id.*).

Regarding Dr. Desta's opinion, the ALJ stated that on June 24, 2016, Dr. Desta wrote handwritten remarks on prescription notes, including a walking cane for arthritis, medication for muscle pain, and a note that Plaintiff "'is under medical care for chronic medical conditions and at the moment can't be gainfully employed.'" (Tr. at 30). Further, the ALJ noted that on July 7, 2016, Dr. Desta completed a "two-page" "'check box form'" regarding Plaintiff's HIV-positive status, finding that Plaintiff is capable of the following:

> The claimant could work one hour a day; stand/walk fifteen minutes at a time, and fifteen minutes total in an eight[-]hour day; sit thirty minutes at a time and sixty minutes total in an eight[-] hour day; and lift no more than five pounds.

(*Id.*). The ALJ afforded Dr. Desta's opinions little weight, claiming they were not supported by Dr. Desta's specific exam findings, or the record as a whole. (*Id.*). The ALJ further stated that she considered Plaintiff's functional limitations "related to his severe and non[-]severe impairments, such as cane usage for walking long distances, based on more recent reports, in the residual functional capacity, which is claimant favorable." (*Id.*).

Plaintiff failed to cite to any of Dr. Desta's records that support Dr. Desta's opinion regarding such extreme functional limitations. (Doc. 17 at 8). Indeed, Plaintiff appears to

concede that there are "limited findings" in Dr. Desta's own treatment notes. (*Id.*). Nonetheless, Court reviews Dr. Desta's treatment notes below.

On December 10, 2015, Plaintiff saw Dr. Desta for arthralgia, high blood pressure, asymptomatic HIV, benign neoplasm of the eye, and AIDS, HIV disease. (Tr. at 459). Dr. Desta's impressions and recommendations were as follows: (1) as to AIDS, HIV, Plaintiff was asymptomatic and stable; (2) as to arthralgia, a pelvic CT showed arthritis in right hip region with Plaintiff having moderate to severe pain with limitations as to daily activities, and recommended further evaluation by orthopedics; and (3) high blood pressure treated by medication. (*Id.* at 461). On March 16, 2016, Plaintiff returned to Dr. Desta with the same problems. (*Id.* at 468, 469). Dr. Desta noted full range of motion in all joints and Plaintiff denied poor balance, headaches, and falling down. (*Id.* at 469, 470). Dr. Desta's impressions and recommendations continued to be the same, including continued hip pain. (*Id.* at 471).

At the June 24, 2016 visit, Plaintiff again complained of right hip and leg pain. (*Id.* at 478). Plaintiff had full range of motion in all joints. (*Id.* at 480). Dr. Desta's impressions and recommendations remained the same with the addition of hyperglycemia. (*Id.* at 481). On this same date, Dr. Desta wrote on a prescription pad that Plaintiff "is under medical care for chronic medical conditions and at the moment can't be gainfully employed." (*Id.* at 456). On July 7, 2016, Dr. Desta completed a Medical Statement Regarding HIV and AIDS for the Social Security Disability Claim. (*Id.* at 500-501). In this Statement, Dr. Desta limited Plaintiff to working one hour per day, standing/walking for 15 minutes at one time and 15 minutes in an 8-hour day, sitting for 30 minutes at one time, sitting for 60 minutes in an 8-hour day, and lifting 5 pounds occasionally and frequently. (*Id.* at 501).

Based upon the Court's review of Dr. Desta's records, the Court finds the ALJ did not err in finding that Dr. Desta's records do not support the extreme limitations listed in his Medical Statement.  Dr. Desta found Plaintiff's HIV was asymptomatic and stable.  (*Id.* at 461, 470, 481). Dr. Desta diagnosed Plaintiff with arthritis and pain in Plaintiff's right hip, but this diagnosis alone does not support Dr. Desta's findings that Plaintiff has such extreme limitations.  Dr. Desta's treating relationship does not overcome the lack of evidence in Dr. Desta's treatment notes to support his opinion.  Further, Plaintiff does not support his arguments with citation to Dr. Desta's treatment notes.

Plaintiff also argues that even though Dr. Desta's treatment notes have limiting findings, Dr. Desta's opinion is consistent with the abnormalities identified by one-time examiner, Eshan M. Kibria, D.O. on August 16, 2016.  (Doc. 17 at 8).  Plaintiff claims that Dr. Kibria found Plaintiff had muscle atrophy of the legs and hands, generalized weakness, sensory abnormalities, a limping gait, and using the walls and furniture to support himself to walk, all of which support Dr. Desta's opinion.  (*Id.*).  The Commissioner responds that Dr. Kibria's August 16, 2016 report post-dates Dr. Desta's July 2016 opinion; thus, Dr. Desta did not rely on Dr. Kibria's opinion when formulating his own.  (*Id.* at 12).  The Court agrees with the Commissioner that Dr. Desta did not have the benefit of Dr. Kibria's opinion when formulating his own opinion.  Further, as discussed in more detail below, Dr. Kibria's Medical Source Statement found Plaintiff less limited than Dr. Desta's opinion and, thus, not supportive of Dr. Desta's extreme limitations. (Tr. at 508-513).

The Court finds that the ALJ did not err in affording little weight to Dr. Desta's opinion. Dr. Desta's treatment notes do not support the extreme limitations found in his opinion.  Further, Dr. Kibria's opinion does not support the extreme limitations found by Dr. Desta.  The Court

finds that substantial evidence supports the ALJ's decision to afford Dr. Desta's opinion little weight.

### 2.     Dr. Kibria

Plaintiff claims that the ALJ's decision to accord some weight to Dr. Kibria's opinion is not supported by substantial evidence.  (Doc. 17 at 9).  Plaintiff argues that the ALJ erred in finding that examining physician, Dr. Kibria, based his report on Plaintiff's subjective allegations to render his opinion.  (*Id.*)  Plaintiff claims that Dr. Kibria's evaluation revealed significant physical abnormalities and those findings, along with the imaging studies, support the limitations found by Dr. Kibria.  (*Id.*).  The Commissioner argues that Dr. Kibria, as a one-time examining physician, is not entitled to any special deference or consideration.  (*Id.* at 12).  Further, the Commissioner contends that Dr. Kibria made some examination findings supportive of his functional limitation, but also made findings that did not support these limitations.  (*Id.* at 13).

In the ALJ's decision, the ALJ addressed Dr. Kibria's examination and opinion as follows:

> Subsequent to the hearing, on August 16, 2016, the claimant underwent a consultative physical examination with Eshan M. Kibria, D.O.  The claimant reported a history of HIV since 2011, along with Hepatitis B or C, hypertension, a "heart flutter" at times, pain in the low back and right hip, and a motor vehicle accident in 2005.  He reported current medications of Flexeril and "HIV and stomach meds."  Education level was noted as high school graduate (Ex.13F/2).  The claimant's mental status examination was unremarkable.  Cranial nerve exam revealed 20/20 uncorrected vision, with normal findings, including normally reactive pupils, full range of extraocular motion, no visual field defect and no facial weakness or asymmetry.  Neck and shoulder exam revealed pain some limitation with left forward elevation and abduction, and with rotation, though right shoulder elevation and adduction was normal.  Neck range of motion was normal in all directions.  The claimant appeared to be uncomfortable while sitting (Ex. 13F/3) and lumbar spine exam revealed straight leg raise positive at 70 degrees bilaterally, though unremarkable extension and lateral flexion.  The claimant refused hip abduction and range of hip motion and flexion was reduced.  Motor exam revealed

generalized 4.5/5 with fasciculations in hands and calves, with atrophy of legs and hand muscles. Sensory exam revealed a mild degree of stocking and glove distribution to pin prick, vibration and light touch more in legs than arms. Reflex exam was normal, along with facial, skin, and cardiovascular exam. Respiratory exam revealed moderate rhonchi. Extremities exam revealed no edema in the upper extremities, no pedal edema and no limitation on use of the hands. Coordination exam revealed the claimant walked with a cane in his right hand. He "was able to walk with limp right and holding on to walls and furniture" to walk. It seemed "like necessary due to frequent cramps in his legs," to walk with a cane (Ex. 13F/2-6). . . .

Though on consultative examination, Dr. Kibria noted "atrophy" of the hands, examination indicated the claimant could use his hands to button, hold a cup, and hold a pencil/pen (Ex. 13F/3 ). . . .

Upon completing a consultative physical examination of the claimant on August 16, 2016, Eshan M. Kibria, D.O., completed a Medical Source Statement of Ability to do Work-related Activities (Physical). The claimant could lift/carry up to 10 pounds occasionally; could sit/stand/walk one hour at a time, sit up to four hours total, and stand/walk up to two hours total; requires a cane to ambulate for any distance greater than 100 feet; could occasionally push/pull with either hand; should never use either foot to operate foot controls; could occasionally perform postural activities, but never climb ladders or scaffolds; could occasionally tolerate extreme cold, but never work around unprotected heights, moving mechanical parts, or operate a motor vehicle; could tolerate moderate (office) noise; and could not walk a block at a reasonable pace on rough or uneven surfaces (Ex.13F/7-12). The undersigned affords this opinion some weight. The extreme limitations do not appear to be consistent with the Doctor's own examination findings, and perhaps were based on the claimant's statements. Notably, Dr. Galst stated there were no varicose veins indicated (to affect ambulation) (Ex. 16F/6). While the undersigned has considered the claimant's need to use a cane over longer distances, and limitations in activities such as climbing or exposure to workplace hazards, the overall record does not support occasional push/pull, or limitation to only sedentary work, which requires lifting no more than ten pounds, etc. Notably, the medical expert did not find such limitations well supported, though a cane was consistent with degenerative arthritic changes of the right hip, he said (Ex. 16F).

(Tr. at 27-28, 30-31).

In this case, the ALJ considered Dr. Kibria's examination of Plaintiff in detail. (*Id.* at 27-28). The ALJ noted Dr. Kibria's examination findings, including the limitations. (*Id.*). The ALJ also noted that Dr. Kibria's notation regarding "atrophy" of the hands was not consistent with Dr. Kibria's examination that showed Plaintiff could use his hands to button, hold a cup, and

hold a pencil.  (*Id.* at 28).  The ALJ also summarized Dr. Kibria's opinion in detail and the limitations he found.  (*Id.* at 30-31).  The ALJ reasoned that Dr. Kibria's own examination findings were not as limited as his opinion, especially as to the push/pull options and the limitation to sedentary work that requires the lifting of no more than ten pounds.  (*Id.* at 31).  Further, the ALJ credited medical expert, Dr. Galst who found Plaintiff not as limited as Dr. Kibria.  (*Id.*).

The Court finds that the ALJ considered Dr. Kibria's examination notes and opinion in detail.  (*Id.* at 27-28, 30-31).  As a one-time examining physician, the ALJ is not required to show deference to his opinion.  *See Bennett*, 2009 WL 2868924, at *2.  Even so, the ALJ states good cause why she only gave some weight to Dr. Kibria's opinion.  Accordingly, the Court finds that the ALJ's decision as to the weight afforded Dr. Kibria's opinion is supported by substantial evidence.

### 3.      Dr. Galst

Plaintiff argues that non-examining medical expert Gerald Galst, M.D.'s opinion is internally inconsistent in that he found Plaintiff limited to a sedentary exertional level, yet the ALJ found Plaintiff capable of performing light work based upon Dr. Galst's opinion.  (Doc. 17 at 10).  Plaintiff argues that the ALJ "simply disregards this obvious discrepancy" and focuses on the parts of Dr. Galst's opinion that support her conclusion that Plaintiff is capable of performing work at the light exertional level.  (*Id.*).  Plaintiff claims that the ALJ does not reconcile her reliance on some of Dr. Galst's opinion, but not on the ultimate conclusion that Plaintiff is limited to sedentary work.  (*Id.*).[3]  The Commissioner responds that the ALJ is entitled to rely on

---

[3]  Plaintiff also asserts that Dr. Galst is board certified in internal medicine and cardiology, which are not particularly relevant to Plaintiff's impairments.  (Doc. 17 at 10).  Plaintiff fails to demonstrate that Dr. Galst was not qualified to render an opinion in this case.

a part of Dr. Galst's opinion.  (*Id.* at 14).  Further, the Commissioner argues that the ALJ noted the inconsistency in Dr. Galst's opinion when he found Plaintiff limited to sedentary work, but the ALJ ultimately determined that Dr. Galst's findings as to Plaintiff's actual limitations aligned more with the light exertional level.  (*Id.*).

Subsequent to the hearing, the ALJ referred Plaintiff for a consultative physical examination and functional capacity assessment completed by Dr. Galst.  (Tr. at 19).  After review of the objective record evidence, Dr. Galst completed interrogatory responses dated August 30, 2016.  (*Id.* at 19, 31).  The ALJ summarized Dr. Galst's report as to Plaintiff's medical history.  (*Id.* at 22-23).

The ALJ noted the following as to Dr. Galst:

Based on the overall evidence, Dr. Galst completed a Medical Source Statements of Ability to do Work-Related Activities (Physical).  Dr. Galst opined that the claimant could perform a range of light work, as adopted in the residual functional capacity above (Ex. 16F/7-12).  However, the undersigned particularly notes that Dr. Galst found the claimant requires a cane to ambulate, such as more than 100 feet (citing to degenerative findings in October 2015 [Ex. 1 lF/8][)].  The claimant worked substantial gainful activity thereafter and no use of a cane was noted until June 24, 2016 (Ex. 9F/2), and even then the claimant's findings on exam on June 24, 2016, do not indicate that use of a cane was imminent for ambulation (Ex.10F).  Notwithstanding, the residual functional capacity includes use of a cane for prolonged ambulation, the day the claimant was prescribed it (Ex.16F/7-l 2).

The claimant's representative objected to the opinion of Dr. Galst and appears to contend the claimant is disabled based on a sedentary functional capacity (Ex. 23E).  The argument is not well supported.  The undersigned notes that Dr. Galst's answer to interrogatory included the claimant had "limited standing/walking, carrying and use of the right lower extremity" and "RFC=sedentary" (Ex. 16F/5).  However, upon assessing the claimant's limitations in a functional capacity assessment, Dr. Galst's findings are consistent with a range of light work per the vocational expert, with a sit/stand option (twenty pounds occasionally and ten pounds frequently, stand/walk, four of eight hours up to one hour at a time; and sit four of eight hours, two hours at a time) (Ex. 16F/8), which is not sedentary. . . .  Dr. Galst is Board Certified in Internal Medicine, and is a medical expert recognized by the Commissioner of Social Security.  Significant weight is given to Dr. Galst's opinion since it is generally consistent with the overall record evidence.

(Tr. at 31-32).

Plaintiff argues that the ALJ erred in relying partially on Dr. Galst's opinion while not adopting his conclusion that Plaintiff is limited to sedentary work.  The parties do not contest that the exertional limitations found by Dr. Galst fall within the light exertional category for jobs, but that Dr. Galst noted that Plaintiff was limited to "RFC=sedentary."  (Tr. at 533, 535-38; Doc. 17 at 10, 14).  Contrary to Plaintiff's argument, the ALJ addressed this inconsistency finding that Dr. Galst's assessed Plaintiff's limitations as consistent with a range of light work, not sedentary per the vocational expert's testimony.  (Tr. at 31).  The ALJ reviewed Dr. Galst's findings again, and found his limitations are consistent with light work and not sedentary.  (*Id.*).  As a non-examining physician, the ALJ is not required to show deference to Dr. Galst's opinion.  *See Bennett*, 2009 WL 2868924, at *2.  Even so, the ALJ clearly articulated her reasons for adopting the limitations found by Dr. Galst to jobs within the light exertional level rather than adopting his overall finding that Plaintiff is limited to sedentary work.  Accordingly, the Court finds that the ALJ's decision as to the consideration of Dr. Galst's is supported by substantial evidence.

For the reasons stated above, the Court finds that the ALJ did not err in her consideration of and the weight afforded to the opinions of Dr. Desta, Dr. Kibria, and Dr. Galst.  The Court further finds that the ALJ's decision is supported by substantial evidence as to these opinions.[4]

**B.     Whether the ALJ Met Her Burden of Showing the Existence of a Significant Number of Jobs in the National Economy**

---

[4]  Plaintiff infers that the ALJ deliberately chose not to find Plaintiff limited to sedentary work because if Plaintiff were, then he would be found disabled pursuant to Medical Vocational Rule 201.14.  (Doc. 17 at 10-11).  Plaintiff does not cite to any language in the ALJ's decision that supports such a conclusion.  Absent this showing, the Court finds Plaintiff's statement both unsupported and conclusory.

The ALJ posed written interrogatories to the vocational expert after the hearing.  (Tr. at 34).  The vocational expert answered the written interrogatories on September 26, 2016.  (*Id.* at 34, 327-29).  After receiving the vocational expert's answers to the ALJ's written interrogatories, Plaintiff submitted his own Interrogatories to the ALJ to be answered by the vocational expert.  (*Id.* at 333-35).  The ALJ refused to submit Plaintiff's interrogatories to the vocational expert.  (*Id.* at 34).  Plaintiff argues that the ALJ "must allow a claimant to propose additional interrogatories to the VE or request a supplemental hearing."  (Doc. 17 at 15).  Plaintiff claims that his interrogatories were reasonable.  (*Id.* at 17).  The Commissioner responds that the ALJ ruled on the materiality of Plaintiff's proposed interrogatories and found that they did not warrant submission to the vocational expert.  (*Id.*).

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform."  *Winschel v. Comm'r of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform.  *Id*.  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

Pursuant to Hallex I-2-5-58:

An ALJ must rule on any objection or request by the claimant regarding the VE's response to the interrogatories.  The ALJ may rule on an objection on the record during the hearing or in a writing that the ALJ exhibits and associates with the record.  Even if the claimant or any appointed representative previously had the opportunity to do so, an ALJ must allow a claimant to propose additional interrogatories to the VE or request a supplemental hearing to question the VE.

Hallex I-2-5-58(B), 1194 WL 637386.  Further, an "administrative law judge may ask the witness any questions material to the issues and will allow the parties or their designated representatives to do so."  20 C.F.R. § 404.950.

The ALJ has a duty to develop a full and fair record, regardless of whether the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  "The ALJ's failure to fulfill his duty to fully develop the record, however, only necessitates a remand if 'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"  *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741–42 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)).  Thus, a plaintiff must demonstrate prejudice before a court will find a plaintiff's right to process has been violated to such a degree that the case must be remanded to the ALJ for further development of the record.  *Id.*  "Prejudice requires a showing that 'the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.'"  *Id.* (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

In this case, the ALJ reviewed Plaintiff's proffered vocational expert written interrogatories.  (Tr. at 34).  The ALJ determined that the "additional interrogatories do not require vocational expert responses as the answers are self-evident or not meritorious and no additional development is warranted."  (*Id.*).  Plaintiff argues:  (1) the ALJ should have informed the vocational expert in the hypothetical that the individual was closely approaching advanced age; and (2) the ALJ should have permitted written interrogatories related to the requirement for a cane and a sit/stand option and whether these limitations would reduce the number of available jobs.  (Doc. 17 at 16).  The Court addresses these specific arguments.

First, Plaintiff asserts that the ALJ failed to consider that Plaintiff changed age categories from younger to closely approaching advanced age when posing the hypothetical to the vocational expert.  (Doc. 17 at 16).  Plaintiff argues that Grid Rule 201.14 would apply as of Plaintiff's 50th birthday, and if he were limited to sedentary work only, Grid Rule 201.14 directs a finding of disabled.  (*Id.*).  Although the ALJ may have failed to indicate that Plaintiff was closely approaching advanced age, in the ALJ's written Vocational Interrogatory, the ALJ stated, "[a]ssume a hypothetical individual who was born on October 19, 1966."  (Tr. at 327).  Thus, the ALJ utilized Plaintiff's birthdate in the hypothetical and the vocational expert knew the correct age of the person in the hypothetical.  In addition, the ALJ limited Plaintiff's RFC to light work, not sedentary work and, further, the ALJ found Plaintiff capable of performing jobs at the light level, including information clerk, office helpers and rental clerks.  (*Id.* at 24, 33).[5]  Thus, the Court finds Grid Rule 201.14 inapplicable and Plaintiff's argument unpersuasive.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.14.

Second, Plaintiff argues that he should have been able to pose interrogatories to the vocational expert regarding non-exertional limitations such as the requirement for a cane and a sit/stand option and whether these additional limitations would reduce the number of available jobs.  (Doc. 17 at 16).  Thus, Plaintiff claims that the ALJ erred in not posing Plaintiff's written interrogatories to the vocational expert.  (*Id.* at 16-17).  The Commissioner contends that the ALJ

---

[5]  In addition to listing jobs as the light level, the ALJ also noted that the vocational expert found an individual with Plaintiff's limitations capable of working at certain jobs at the sedentary level as well.  (Tr. at 33).  However, the RFC limited Plaintiff to light work and the ALJ listed jobs at the light level.  (*Id.* at 24, 33).  Thus, the Court finds any error harmless.  *See Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006) (holding that a remand is not warranted when an ALJ commits harmless error).

is not required to pose questions she finds immaterial and substantial evidence supports the ALJ's finding that Plaintiff's proposed questions are immaterial. (*Id.* at 18).

The ALJ posed a hypothetical in a written interrogatory that included the limitation that the "individual could travel about 100' without the use of a cane and then requires a cane for ambulation." (Tr. at 329). The vocational expert indicated that an individual could perform the jobs she listed previously with this additional limitation. (*Id.*). Plaintiff's interrogatory added that "the individual requires the use of a cane for ambulation." (*Id.* at 334). The ALJ determined that the overall record does not support a limitation that Plaintiff requires the use of a cane for ambulation. (*Id.* at 34). Thus, the ALJ found that this question is not material. (*Id.*). In the RFC, the ALJ determined that Plaintiff "could travel about 100 feet without the use of a cane, and then required a cane for ambulation." (*Id.* at 24). An ALJ is required to include only the limitations she finds in the hypothetical to the vocational expert. *See Winschel*, 631 F.3d at 1180. Thus, the ALJ did not err by declining to propound this interrogatory to the vocational expert.

Next, Plaintiff argues that the ALJ should have permitted an interrogatory regarding the sit/stand option and whether that limitation would reduce the number of available jobs. (Doc. 17 at 16). Plaintiff claims that the vocational expert did not explain how Plaintiff could perform light work despite being limited to four (4) hours standing and walking in a day. (*Id.*). In the hypothetical posed to the vocational expert in a written interrogatory, the ALJ included that the individual stand/walk for four (4) hours in an eight-hour day up to one hour at a time. (Tr. at 327). The vocational expert answered, listing jobs at the light exertional level that allow for a change in position, including information helper, office clerk, rental clerk. (*Id.* at 328). In an interrogatory response regarding any conflict in his opinion and that of the DOT and SCO, the

vocational expert explained that the "DOT and/or SCO does not define alternating positions for any occupation.  That information I obtain from my experience."  (*Id.* at 329).  From the response, it is clear that the vocational expert considered an individual who would need to alternate positions while working and listed such jobs.  Further, Plaintiff's proposed written interrogatories do not include a question regarding a sit/stand option.  (*Id.* at 333-35).

The Court finds that substantial evidence supports the ALJ's decision not to submit Plaintiff's written interrogatories to the vocational expert.  The ALJ found Plaintiff's written interrogatories were not meritorious.  In addition, Plaintiff failed to show prejudice.  Accordingly, the Court finds that the ALJ's decision not to propound Plaintiff's written interrogatories to the vocational expert supported by substantial evidence.

### C.    Whether the ALJ Adjudicated the Entire Period Between Plaintiff's Alleged Onset Date and the ALJ's Decision

Plaintiff argues that the ALJ erred in her consideration of Plaintiff's work attempts after Plaintiff's alleged onset date.  (Doc. 17 at 22).  Plaintiff claims that the ALJ erred in only adjudicating the continuous 12-month period between July 2014 and December 2015.  (*Id.* at 23).  Plaintiff contends that the ALJ erred when she found Plaintiff engaged in substantial gainful activity between April and June 2014, and January through March 2016.  (*Id.*).  Plaintiff claims that these errors were harmful because the ALJ considered this work activity to be disqualifying for disability.  (*Id.* at 24).  The Commissioner responds that notwithstanding the ALJ's statements regarding Plaintiff's employment after the onset date, the ALJ "clearly considered all of the evidence of record, starting with evidence dating from before Plaintiff's alleged onset date in January 2013 and proceeding through the medical evidence up to August 30, 2016."  (*Id.* at 24).

The ALJ found the following:

2.  The claimant engaged in substantial gainful activity during the following periods:  April through June 2014; and January through March 2016. . . .

3.  However, there has been a continuous 12-month period(s) when the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(Tr. at 21-22).

Even if the ALJ erred in finding that Plaintiff engaged in substantial gainful activity after the onset date, the Court finds that Plaintiff failed to point out any medical evidence of record that the ALJ did not consider during this time period.  The ALJ considered medical records from July 2011 – before the alleged onset date of July 1, 2013 – through August 2016.  (Tr. at 19, 25-32).  Plaintiff bears the burden of persuasion through step four of the sequential evaluation and Plaintiff's arguments are unpersuasive and conclusory.  *See Bowen*, 482 U.S. at 146 n.5 (regarding the burden of persuasion).  Therefore, Plaintiff did not meet his burden to show that the ALJ's alleged error was harmful.  *See Pichette*, 185 F. App'x at 856.  Accordingly, even if the ALJ erred in determining substantial gainful activity, the Court finds the error harmless and the ALJ's decision supported by substantial evidence.

## III.      Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

**IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Respectfully recommended in Chambers in Ft. Myers, Florida on May 22, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties